# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| *RAWAA ALAZAWY,* )<br>)<br>*Plaintiff* )<br>)<br>*v.* )<br>)<br>*CAROLYN W. COLVIN,* )<br>*Acting Commissioner of Social Security,* )<br>)<br>*Defendant* ) | *No. 2:16-cv-00240-JHR* |

## MEMORANDUM DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge demonstrated improper bias against her because of her religious practices, cultural customs, and role as a mother, improperly substituted her own views for expert medical opinion, and erroneously refused to reopen a previous SSI application. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 3-14. I find no error and, accordingly, affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 16, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 17.

administrative law judge found, in relevant part, that the plaintiff had severe impairments of post-traumatic stress disorder ("PTSD") and depression, Finding 2, Record at 18; that she did not have an impairment or combination of impairments that met or medically equaled the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Finding 3, *id*. at 19; that she had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations: she could understand, remember, and carry out simple, repetitive instructions and persist at that level of complexity for eight hours a day, five days a week consistently, she would need to avoid work with the public, but could interact with co-workers and supervisors appropriately, and she could adapt to routine changes in the work setting, Finding 5, *id*. at 20-21; that, considering her age (27 years old, defined as a younger individual, on September 5, 2012, the date her application was filed), education (illiterate and able [sic] to communicate in English), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 24; and that she, therefore, had not been disabled since September 5, 2012, Finding 10, *id*. at 25.[2]  The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of*

---

[2] The administrative law judge erroneously stated that the plaintiff was able to communicate in English.  *See* Finding 7, Record at 24.  In fact, as the administrative law judge earlier noted, the plaintiff "does not read or speak English." *Id.* at 18.  However, the error is not outcome-determinative.  The administrative law judge applied section 204.00 of the so-called "Grid," the Medical-Vocational Guidelines contained in Appendix 2 to Subpart P, 20 C.F.R. § 404, pursuant to which the result is the same regardless of whether a claimant can or cannot communicate in English.  *See id*. at 24.

*Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 416.925(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

## I. Discussion

### A. Bias

The plaintiff first contends that the administrative law judge made multiple inappropriate references to her religious and cultural practices and the fact that she was a homemaker and mother, generally evidencing bias and undermining her specific findings that (i) the opinions of treating physician Rana Dagher, M.D., were entitled to little weight, (ii) the plaintiff's condition did not meet or medically equal the criteria of Listings 12.04 (affective disorders) or 12.06 (anxiety-related

disorders), and (iii) the plaintiff's allegations were not entirely credible. *See* Statement of Errors at 3-13. She fails to make a persuasive case for remand on this basis.

### 1. Generally

As the plaintiff asserts, "[a] claimant in a Social Security disability proceeding is entitled to a fair, unbiased and impartial hearing, presided over by an unbiased non-partisan trier of fact." *Id*. at 5 (quoting *Hendricks v. Sullivan*, No. 90-0709-CV-W-3, 1992 WL 120383, at *8 (W.D. Mo. Feb. 12, 1992) (citing *Local No. 3, United Packinghouse Workers of Am. v. NLRB*, 210 F.2d 325, 330 (8th Cir. 1954)). She notes that this is of particular importance in an administrative setting and that, once bias appears, fairness demands a remand, even when there is evidence to support the tainted judgment:

> [A] fair trial by an unbiased and non-partisan trier of the facts is of the essence of the adjudicatory process as well when the judging is done in an administrative proceeding by an administrative functionary as when it is done in a court by a judge. Indeed, if there is any difference, the rigidity of the requirement that the trier be impartial and unconcerned in the result applies more strictly to an administrative adjudication where many of the safeguards which have been thrown around court proceedings have, in the interest of expedition and a supposed administrative efficiency been relaxed. Nor will the fact that an examination of the record shows that there was evidence which would support the judgment, at all save a trial from the charge of unfairness, for when the fault of bias and prejudice in a judge first rears its ugly head, its effect remains throughout the whole proceeding. Once partiality appears, and particularly when, though challenged, it is unrelieved against, it taints and vitiates all of the proceedings, and no judgement based upon them may stand.

*Id*. (quoting *Hendricks*, 1992 WL 120383, at *9) (quoting *United Packinghouse*, 210 F.2d at 330).

However, administrative law judges are presumed to act impartially – a presumption that "can be overcome only with convincing evidence that a risk of actual bias or prejudgment is present." *Bickford v. Barnhart,* No. 05-236-P-S, 2006 WL 2822391, at *5 (D. Me. Sept. 29, 2006) (rec. dec., *aff'd* Oct. 20, 2006). The plaintiff falls short of meeting this standard.

The plaintiff analogizes this case to *Hamilton v. Colvin*, No. CV 13-08528 SS, 2015 WL 162984 (C.D. Calif. Jan. 13, 2015), in which the United States District Court for the Central District of California found bias sufficient to warrant assigning a case to a different administrative law judge on remand when an administrative law judge "made *four* direct references to [a claimant's] ethnicity, none of which were necessary to resolve any of the issues presented[.]" Statement of Errors at 5-6 (quoting *Hamilton*, 2015 WL 162984, at *11) (emphasis in original)).

However, here, for the reasons discussed below, none of the assertedly objectionable references to the plaintiff's religion or culture or her status as a parent and homemaker is inappropriate in the context in which it was considered. As a result, as counsel for the commissioner contended at oral argument, the plaintiff fails to demonstrate "that the ALJ's [administrative law judge's] behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment." *Hamilton*, 2015 WL 162984, at *9 (citation and internal quotation marks omitted).

## 2. Handling of Treating Physician's Opinions

The plaintiff, an Iraqi refugee, "came to this country in 2009 suffering anxiety problems because of being alone as her husband was in prison." Record at 702. In a treatment note dated May 6, 2010, Jennifer A. Zeliger, M.D., the plaintiff's obstetrician-gynecologist, stated that she was "very concerned for [the plaintiff's] mental health[.]" *Id.* at 349. She noted that the plaintiff told her that, following the birth of her second child in mid-February 2010, she had "had difficulty sleeping, poor appetite, spends much of her time tearful, no energy and while she can functionally take care of her children, she recognizes she is not engaging with them as she should." *Id.* at 348. She also noted that the plaintiff's husband had indicated that his wife had been "fine until after her recent delivery" but now "misse[d] her family very much" and "bec[a]me[] terrified wheneve[r]

she s[aw] a policeman on the street." *Id.*  She added that the plaintiff's husband reported that the couple had had "a traumatic history in Iraq" and that he previously had been "a political prisoner at one point." *Id.* (internal quotation marks omitted).

Dr. Zeliger assessed the plaintiff with "likely postpartum depression, possible PTSD, and some suicidal ideation[.]" *Id.* at 349.  She noted that she had started the plaintiff on Prozac two weeks prior to that time, with no improvement, and that she planned to continue efforts to obtain an appointment for her with a psychiatrist.  *See id.* at 348-49.

The plaintiff began treatment with a counselor, Rose A. Bradshaw, L.C.S.W., on May 14, 2010, *see id.* at 886, and with a psychiatrist, Michael Garnett, M.D., on December 23, 2010, *see id.* at 607.  Dr. Garnett diagnosed her with major depression, single episode, moderate, and PTSD. *See id.* at 609.  Dr. Dagher, of the same practice group, became the plaintiff's psychiatrist on November 5, 2012.  *See id.* at 706.  Dr. Dagher submitted two opinion letters in support of the plaintiff's SSI application, dated April 2, 2013, and November 10, 2014, *see id.* at 706-07, 1229-30, and a Medical Source Statement of Ability To Do Work-Related Activities (Mental) ("Mental RFC Opinion") dated November 10, 2014, *see id.* at 1226-28.

In her 2013 letter, Dr. Dagher stated, in relevant part:

[The plaintiff's] psychiatric illness has been particularly resistant to treatment. [She] has failed trials of Paxil, Lexapro, and Remeron.  On her current dose of Effexor XR (300 mg per day) her depressive symptoms are still fluctuating between being moderate to severe.  She struggles with death wishes and fleeting suicidal thoughts.  Her insomnia is particularly debilitating and [the plaintiff] has failed trials of zolpidem, trazodone, Seroquel, diazepam, and olanzapine.  With using Seroquel and olanzapine for insomnia, my approach was unconventional, but I was desperate to control [her] extreme hyper-vigilance and insomnia at night, to no avail.  The [plaintiff] is still sleeping at night anywhere between 2 and 4 hours, and sleep is interrupted by nightmares.  She also experiences auditory hallucinations when she is awake.  The auditory hallucinations (like hearing knocks on the door) have not responded to Seroquel and then olanzapine.  [She] is constantly worried and hyper-vigilant.  She has intrusive memories of war trauma, when she was held at gunpoint (while 5 months pregnant) and her husband dragged out of the house

and then he was detained and tortured for 11 months. At times [she] is not able to achieve basic tasks of cooking; the dish will drop out of her hand; or she will inadvertently cut herself while using the knife, due to her lack of focus. A long time ago she gave up on helping with mail and different paperwork, due to her short-term memory deficits.

[The plaintiff] is disabled due to her psychiatric illness. She is not able to retain any new information. She is not capable of holding a job due to her poor energy level, poor concentration, ongoing hyper-vigilance and anxiety. To her credit, she has always been compliant with appointments and medications and oftentimes she has tolerated various side effects (dizziness, headaches) in order to give the medication a chance to start working.

*Id*. at 706-07.

In her 2014 letter, Dr. Dagher stated that the plaintiff had "on-going symptoms of Depression, and PTSD, in the context of resettling in the US, adjusting to a new lifestyle and grieving the loss of a happy life she was leading before all this happened." *Id*. at 1229. She noted:

Most importantly, insomnia has been resistant to all kinds of medications. It appears as if [the plaintiff] is in a permanent state of hyper arousal and hyper vigilance, whereby she cannot relax enough to let go and sleep at night. This state of hyper arousal and chronic sleep deprivation has taken a toll on her mental capabilities: [her] ability to sustain attention and to retain even simple instructions or information is extremely limited.

*Id*. Dr. Dagher noted, for example, that the plaintiff misplaced items, dropped dishes, burned her hands on the oven, and many times could not provide names, approximate locations, or dates in response to Dr. Dagher's questions. *See id*. at 1229-30. She again stated that, in her opinion, the plaintiff was "not capable of sustained gainful employment or work, performed five days a week, 8 hours a day" or, for that matter, "any amount of hours of employment." *Id*. at 1230.

In her Mental RFC Opinion, Dr. Dagher indicated that the plaintiff had (i) marked limitations in understanding, remembering, and carrying out simple instructions and extreme limitations in understanding, remembering, and carrying out complex instructions, and (ii) marked limitations in interacting appropriately with the public, co-workers, and supervisors and extreme

limitations in responding appropriately to usual work situations and to changes in a routine work

setting. *See id.* at 1226-27. With respect to the first category of limitations, Dr. Dagher explained:

> [The plaintiff] has very poor working memory. She is not able to retain information
> A and B, in order to get to step C. Concentration is very poor. She is distracted by
> worries and past memories of trauma. She is often drifting off and not able to attend
> to the present moment.

*Id.* at 1226. With respect to the second category, she explained: "Has very poor sleep at night and

thus is irritable and quick to burst out in tears when small demands are put on her[.]" *Id.* at 1227.

> She identified the following as the factors supporting her assessment:

> I have been seeing [the plaintiff] since 11/05/2012. I have spoken several times to
> her husband. She has been unable to learn English. She cannot handle mail or bills.
> She misplaces mail at home. She lo[]ses personal items.

*Id.*

The administrative law judge gave little weight to Dr. Dagher's two letter opinions or the

Mental RFC Opinion. *See id.* at 23-24. She explained:

> Dr. Dagher opined the [plaintiff] would be unable to work because of her low
> energy and reduced concentration. She also cited the [plaintiff's] visual
> hallucinations. However, [she] fails to comment on the [plaintiff's] ability to care
> for three children and her household. Moreover, in her treatment notes, she
> attributes the [plaintiff's] visual hallucinations (which first appeared in 2014), as
> related to an excess in the use of Lunesta. Moreover, while she comments on the
> [plaintiff's] compliance with appointments, the undersigned notes the [plaintiff]
> has had little other mental health treatment and was not compliant with her counseling
> appointments. Dr. Dagher's opinion is inconsistent with the objective medical
> evidence, including her own treatment notes, which generally noted that [she] is
> depressed with poor concentration, but has an average fund of knowledge, is well
> groomed, is alert and oriented and uses a good Arabic vocabulary. For these
> reasons, Dr. Dagher's opinion is given little weight. Moreover, the ultimate issue
> of disability is one that is reserved for the Commissioner of Social Security and her
> designees.

> . . . In [the Mental RFC Opinion], she finds the [plaintiff] has marked to extreme
> limitations in almost all mental functional areas. She cites the [plaintiff's]
> inattention and inability to learn English or how to pay bills. *However, she fails to
> consider that the [plaintiff] considers herself a homemaker, has little interest in
> working outside the home and appears comfortable being at home and raising*

*children*.  **There is little reason for the [plaintiff] to learn a new culture if she is satisfied with her current role as a wife and mother.**  Moreover, the record shows the [plaintiff] has been able to engage with her cultural community by going to the Mosque and has one friend.  Her stated intent in learning English was to meet other members of her own community.  The medical evidence, including the [plaintiff's] lack of substantial treatment other than with medications, does not support limitations at the marked or extreme level.

*Id*. at 23-24 (emphasis added).

The plaintiff complains that the administrative law judge improperly rejected the two letter opinions and the Mental RFC Opinion on the basis of the passage I have italicized, contending that the second sentence (which I have boldfaced) is particularly egregious because it is not only speculative but also represents an interjection of the administrative law judge's personal opinion into the adjudication of the claim.  *See* Statement of Errors at 6-7.  She argues that the letter opinions and the Mental RFC Opinion should have been afforded controlling weight or, in the alternative, greater weight.  *See id*. at 7-10.  She analogizes this case to *Lopez v. Astrue*, 805 F. Supp.2d 1081 (D. Colo. 2011), in which an administrative law judge improperly rejected a treating physician's opinion on the basis that the treating physician had failed to take into account the claimant's ability to take care of his children.  *See id.* at 9-10; *Lopez*, 805 F. Supp.2d at 1089 ("[T]he fact that [the claimant] was taking care of two children does not provide a basis to reject [the treating physician's] opinions, at least without consulting [him] to determine if that type of child care would impact his opinions.").

As the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 15) at 5, and the plaintiff's counsel acknowledged at oral argument, however, Dr. Dagher's 2013 and 2014 letter opinions are not entitled as a matter of law to controlling weight or to any specific degree of weight.  While a treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record," 20 C.F.R. § 416.927(c)(2), the question of whether a claimant is disabled is among issues reserved to the commissioner, with respect to which even the opinion of a treating source is entitled to no "special significance" and cannot be assigned controlling weight, *id.* § 416.927(d); Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016) ("SSR 96-2p"), at 112.

Nonetheless, even with respect to issues reserved to the commissioner, an administrative law judge must "explain the consideration given to the treating source's opinion(s)." Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016) ("SSR 96-5p"), at 127.

In assessing the 2013 and 2014 letter opinions, the administrative law judge met this standard. She did discount the letter opinions in part on the basis that Dr. Dagher had failed to comment on the plaintiff's ability to care for her three children and her household. *See* Record at 23. However, in context, that observation was not indicative of bias. While "a claimant's ability to participate in limited household chores, in and of itself, does not prove that he [or she] has the ability to perform substantial gainful activity[,] . . . [a]n administrative law judge may consider whether a claimant's daily activities reflect a greater capacity for work-related activities at the relevant time than he or she has alleged." *Preston v. Colvin*, Civil No. 2:13-CV-321-DBH, 2014 WL 5410290, at *4 (D. Me. Oct. 21, 2014) (citation and internal punctuation omitted). In keeping with that precept, the administrative law judge permissibly concluded that Dr. Dagher's failure to address the plaintiff's daily activities called into question her opinion that the plaintiff was disabled from working any hours at all.

As the commissioner argues, *see* Opposition at 8, *Lopez* is distinguishable in that, there, the administrative law judge found that because the claimant could perform child care, he could perform work at a light level, a finding that was "unsupported by any evidence" and directly contradicted the opinion of a treating source whom the administrative law judge wrongly stated was unaware of the claimant's child care activity, *Lopez*, 805 F. Supp.2d at 1088-89.

In this case, by contrast, the administrative law judge did not predicate her RFC finding solely on the plaintiff's ability to care for her children or her household; rather, she relied on the July 12, 2013, RFC opinion of agency nonexamining consultant John J. Warren, Ed.D. *See* Record at 23, 65-69. As the commissioner observes, *see* Opposition at 6-7, the plaintiff has identified no reason why the Warren RFC opinion cannot stand as substantial evidence of her RFC, *see generally* Statement of Errors. Indeed, Dr. Warren had the benefit of review of Dr. Dagher's 2013 letter opinion and then-available treatment notes, concluding that her opinion did "not square with actual treatment notes and behavioral observations." Record at 65.

Beyond this, the administrative law judge offered additional reasons for affording the letter opinions little weight, including that they were inconsistent with Dr. Dagher's own treatment notes. *See id.* at 23. That, in itself, qualifies as a "good reason" for assigning them little weight. *See, e.g., Bailey v. Colvin*, No. 2:13-cv-57-GZS, 2014 WL 334480, at *3 (D. Me. Jan. 29, 2014) (describing an inconsistency between a treating source's treatment notes and conclusions as among the "well-recognized bases in Social Security law for rejection" of those conclusions) (footnote omitted).[3]

I discern no error in the handling of the 2013 and 2014 letter opinions.

---

[3] For example, as the commissioner points out, *see* Opposition at 5, Dr. Dagher's treatment notes generally describe the plaintiff's concentration as "good" and her remote and short-term memory as "grossly intact[,]" *see, e.g.*, Record at 725, 728, 1025-26, 1028, 1050, 1052.

Unlike the 2013 and 2014 letter opinions, the Mental RFC Opinion does bear on the nature and severity of the plaintiff's impairments. *See* Record at 1226-28. As such, as counsel for the commissioner acknowledged at oral argument, it is entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the plaintiff's] case record," 20 C.F.R.§ 416.927(c)(2).

When a treating source's medical opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See id.*[4] An administrative law judge may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart,* No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

The plaintiff contends that the administrative law judge's consideration of the Mental RFC Opinion was affected by bias, absent which it merited controlling, or at least greater, weight. *See* Statement of Errors at 8-9.

---

[4] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors that tend to support or contradict the opinion. *See* 20 C.F.R. § 416.927(c).

The commissioner concedes that, "at first blush, the ALJ's comments [boldfaced and italicized above] seem disconnected from the disability determination." Opposition at 7-8. However, she contends that "the context and import of that conclusion remain the same: the ALJ was identifying evidence in the record that, at the very least, called into question Dr. Dagher's justification for the significant limitations she imposed." *Id.* at 8. I agree.

As in the case of the letter opinions, the administrative law judge deemed the Mental RFC Opinion worthy of less weight because, despite assessing marked and extreme limitations attributed in part to the plaintiff's *inability* to learn English and handle mail or bills, *see* Record at 1227, Dr. Dagher overlooked evidence that seemingly called those conclusions into question.

Specifically, the administrative law judge explained, Dr. Dagher "fail[ed] to consider that the [plaintiff] considers herself a homemaker, has little interest in working outside the home and appears comfortable being at home and raising children." *Id.* at 23. The administrative law judge noted, for example, that the plaintiff's "stated intent in learning English was to meet other members of her own community." *Id.* at 24.

These observations were not improper: a claimant's "prior work record and efforts to work" are relevant to assessment of the credibility of her allegations of disabling limitations. Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016) ("SSR 96-7p"), at 137.

In context, the comment that "[t]here is little reason for the [plaintiff] to learn a new culture if she is satisfied with her current role as a wife and mother" was not reflective of bias against parents, homemakers, or religious or cultural practices but, rather, part of the overarching observation that Dr. Dagher had not addressed evidence calling into question whether the plaintiff had marked to extreme restrictions performing job-related functions.

Nor did the administrative law judge err in failing to accord the Mental RFC Opinion controlling or at least greater weight.

The plaintiff contends that the Mental RFC Opinion is not inconsistent with the other medical evidence of record, which demonstrates that she received psychiatric and/or counseling treatment since April 2010 for the same symptoms identified by Dr. Dagher, including extremely disturbed sleep, difficulty completing household tasks, severe fatigue, and significant trouble with memory and focus. *See* Statement of Errors at 8. She adds that the administrative law judge improperly ignored a December 23, 2010, evaluation by Dr. Garnett diagnosing her with PTSD and major depression and assessing a GAF, or Global Assessment of Functioning, score of 50. *See id.* at 8.[5]

As the commissioner rejoins, *see* Opposition at 7, the fact that a claimant can identify record evidence that is consistent with a treating physician's opinion does not warrant reversal and remand when an administrative law judge has relied on substantial evidence to the contrary, *see, e.g., Huff v. Colvin*, No. 2:13-cv-378-JDL, 2014 WL 5473036, at *5 n.3 (D. Me. Oct. 27, 2014) (when a claimant's and administrative law judge's characterizations of the evidence are "equally reasonable," the commissioner must prevail).

---

[5] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* (boldface omitted). In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores. *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").

The administrative law judge relied, among other things, on the contrary opinion of Dr. Warren, *see* Record at 23, and the plaintiff has not challenged that reliance, *see generally* Statement of Errors. The plaintiff fails to demonstrate that consideration of the Garnett evaluation would have tipped the balance. As the commissioner suggests, *see* Opposition at 7 n.3, her argument on this point is cursory, *see* Statement of Errors at 8; *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

For these reasons, despite the administrative law judge's unfortunate use of phraseology that can be misread out of context, the plaintiff falls short of demonstrating entitlement to remand based on bias assertedly demonstrated, in part, by a lack of substantial evidence supporting her handling of the Dagher Mental RFC Opinion. *See, e.g., Abdi v. Astrue*, No. 2:10-cv-89-GZS, 2010 WL 5452125, at *2 (D. Me. Dec. 28, 2010) (rec. dec., *aff'd* Jan. 24, 2011) (plaintiff did not demonstrate entitlement to remand based on alleged bias in credibility determination when administrative law judge legitimately considered claimant's pursuit of unemployment benefits, which indicated an ability to work, inconsistent with his claim of disability, and, "Even if the administrative law judge's characterization of the plaintiff's application for unemployment benefits, pursuit of a litigation settlement, and application for Social Security benefits as 'economic disincentives' to seeking work could reasonably be construed as merely speculative, prejudicial . . . and irrational, as the [claimant] contends, . . . they do not rise to the level of sufficient bias to require remand.") (citation and internal quotation marks omitted).

### 3. Finding Regarding Listings 12.04 and 12.06

The administrative law judge concluded that the plaintiff's mental impairments did not meet or medically equal the criteria of Listings 12.04 and 12.06 in that she had failed to

demonstrate, for purposes of "paragraph B" of those listings, that she had at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration. *See* Record at 19.

She found, instead, that the plaintiff had mild restrictions in activities of daily living and moderate difficulties in social functioning and maintaining concentration, persistence, or pace, and that she had had no episodes of decompensation of extended duration. *See id*. at 19-20.

The plaintiff contends that the administrative law judge improperly relied on her "religious practices and parenthood as a precise basis to minimize [her] functional limitations." Statement of Errors at 11. Specifically, she argues that the administrative law judge wrongly minimized her restrictions in (i) activities of daily living on the bases that she cared for her children, was expecting a fourth child, attended Mosque on occasion, and listened to the Querran every day, (ii) social functioning on the basis that she attended religious services at the Mosque, and (iii) concentration, persistence, or pace on the bases that she was able to concentrate sufficiently to listen to the Querran every day and had good use of the Arabic vocabulary. *See id*.

The plaintiff's argument is unpersuasive.

First, as the commissioner suggests, *see* Opposition at 11-13, nearly all of the cited activities are relevant to the categories for which they were considered and, hence, were properly taken into account.[6] Second, as the commissioner observes, *see id*. at 10, these activities were not

---

[6] The plaintiff argues that the fact that she had good use of the Arabic vocabulary is particularly irrelevant because Arabic is her native language. *See* Statement of Errors at 11. At oral argument, her counsel added that the administrative law judge had failed to indicate what type of concentration was required in speaking Arabic or at what level the plaintiff was speaking it, quoting *Shaw v. Colvin*, Civil No. 13-cv-503-JL, 2015 WL 1097419, at *3 (D.N.H. Mar. 11, 2015), for the proposition that "the ability to concentrate for short periods does not translate to an ability to summon the concentration needed to perform tasks consistently in a workplace environment over the course of an eight-hour workday or 40-hour workweek." The administrative law judge properly characterized the plaintiff's use of the Arabic vocabulary as "good[,]" Record at 20, a finding derived from Dr. Dagher's own records, *see, e.g., id*. at

the "precise basis" for the Step 3 findings. With respect to each category, the administrative law judge relied on other evidence of record. *Compar*e Statement of Errors at 11 *with* Record at 19-20. Finally, the administrative law judge's Step 3 findings are directly supported by the opinion of Dr. Warren, which she accorded great weight. *See* Record at 19-20, 23, 66.

The Step 3 findings, hence, are neither the product of bias nor unsupported by substantial evidence.

### 4. Credibility Determination

The plaintiff finally contends that the administrative law judge's credibility finding is infected by bias against her status as a homemaker, given her references to the fact that the plaintiff never worked outside the house, never had been in the job market, took care of three small children, "a demanding role for anyone[,]" and was "pregnant again," suggesting, in the administrative law judge's view, that she felt capable of taking care of a fourth child. Statement of Errors at 11-12 (quoting Record at 22).

She contends that reliance on these factors was improper and, in any event, in relying on the plaintiff's ability to care for her children, the administrative law judge overlooked evidence that she required help in doing so, including the testimony at hearing of her neighbor. *See id*. at 12 (citing Record at 46, 463, 467, 721).

---

725. While that facility, standing alone, was not indicative of a concentration ability sufficient to sustain full-time work, it had at least marginal relevance to the question of whether the plaintiff's mental impairments caused moderate, *versus* greater, limitation. While the fact of the plaintiff's pregnancy, standing alone, has no discernible relevance to analysis of her activities of daily living, the administrative law judge explained elsewhere in her decision that the plaintiff had consistently stated that she wanted to have more children and that her pregnancy as of September 2014 suggested that she felt capable as of that time of taking care of a fourth child. *See* Record at 22. As the commissioner points out, *see* Opposition at 17, the reasonableness of this inference is bolstered by a notation in an April 24, 2013, case management note that the plaintiff stated that she was "not ready to have another baby because she is going through alot [sic] of mental stress and she cannt [sic] take care of her children that well[,]" Record at 721. While, as the plaintiff's counsel pointed out at oral argument, one could draw many possible inferences from the plaintiff's fourth pregnancy, I disagree that the inference drawn in this case was so speculative as to constitute evidence of actual bias. As counsel for the commissioner rejoined, the existence of the April 24, 2013, notation renders the inference a fair one, rooted in the plaintiff's own disclosure to her case manager.

Pursuant to SSR 96-7p, a decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p at 134; *see also, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

The administrative law judge's credibility finding met this standard and was not tainted by bias. There was nothing improper about her consideration of the plaintiff's work history or activities of daily living. *See, e.g*., SSR 96-7p at 137 (assessment of the credibility of an individual's statements must be based on all evidence in the case record, including "prior work record and efforts to work" and "daily activities"); *Colon v. Chater*, No. 98-1245, 1998 WL 1085796, at *1 (1st Cir. Sept. 30, 1998) (administrative law judge supportably discounted claimant's allegation of disabling pain in part on basis of ability to care for two young children); *Rucker v. Colvin*, No. 2:13-CV-218-DBH, 2014 WL 1870731, at *7 (D. Me. May 8, 2014) ("while a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an administrative law judge properly may take such activities into consideration in assessing the credibility of a claimant's allegations") (citations omitted).[7]

---

[7] As noted above, while a claimant's pregnancy, standing alone, would have no discernible relevance to analysis of activities of daily living, the administrative law judge explained why she drew an inference that the plaintiff's pregnancy indicated that, as of September 2014, she felt capable of taking care of a fourth child.

She did not ignore evidence that the plaintiff required help with chores and child care. Rather, she noted that the plaintiff performed her household chores with the help of her friend and daughter but could do it herself if no one was in the home with her. *See* Record at 19. This was consistent with the plaintiff' testimony. *See id*. at 39-40. In addition, she correctly noted that the plaintiff told a provider in April 2014 that she did not go to bed until 2:30 a.m. because she was so busy doing chores. *See id*. at 22, 1120.

Finally, the administrative law judge's credibility finding was based on other factors besides those underscored by the plaintiff, including indications of improvement such as her case manager's notation as of January 2013 that her condition had improved by 40 percent and she was able to go to the Mosque and talk about her cultural group, *see id*. at 21, 719, her discharge from case management services in June 2014, *see id*. at 22, 1212, and her discharge from counseling in August 2014 for inconsistent attendance, *see id*. at 22, 1186.

I find no reason to disturb the administrative law judge's credibility finding.

**B. Substitution of Administrative Law Judge's View for Expert Medical Opinion**

The plaintiff next contends that the administrative law judge improperly substituted her own lay judgment for expert medical opinion when she discounted Dr. Dagher's Mental RFC Opinion. *See* Statement of Errors at 13-14. Specifically, she takes issue with the administrative law judge's conclusion that "[t]he medical evidence, including the [plaintiff's] lack of substantial treatment other than with medications, does not support limitations at the marked or extreme level." *Id*. at 14 (quoting Record at 24).

She complains that the administrative law judge (i) ignored her extensive mental health records in stating that she treated only with medications, and, (ii) even assuming that she did treat

only with medications, impermissibly substituted her own lay judgment that medications are not "substantial treatment." *Id.* (internal quotation marks omitted).

First, as the commissioner suggests, *see* Opposition at 19 n.4, despite her phraseology, the administrative law judge did not ignore the fact that the plaintiff received other treatment besides medications. She noted that the plaintiff had "intermittently participated in counseling and was seeing a case manager regularly until March 2014." Record at 19; *see also id.* at 21-22 (summarizing treatment records).

More importantly, as the commissioner notes, *see* Opposition at 18-19, the administrative law judge resolved conflicts in expert medical opinion by choosing to give greater weight to the Warren opinion than to the Dagher Mental RFC Opinion, *see* Record at 12-24. "[R]esolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the commissioner], not for the doctors or the courts." *Rodriguez*, 647 F.2d at 222. "An ALJ has discretion to resolve conflicts among expert opinions by according great weight to the opinion of a nonexamining, consulting expert." *Thibodeau v. Social Sec. Admin. Comm'r*, No. 1:13-cv-00037-NT, 2014 WL 1908950, at *3 (D. Me. May 12, 2014).

Dr. Warren acknowledged that the plaintiff had received both "medication management" and "supportive counseling/case management services." Record at 65. He was competent to judge whether this level of treatment, as well as the record evidence generally, was consistent with a disabling level of functional restriction. He determined that it was not.

## C. Refusal To Grant Request To Reopen Prior SSI Application

The plaintiff finally argues that the administrative law judge erred in denying her request to reopen an application for SSI benefits filed on April 27, 2011, and initially denied by the agency on June 29, 2011. *See* Statement of Errors at 14. She contends that the administrative law judge's

cursory finding that she presented no evidence that would constitute good cause for reopening the prior application was clearly erroneous, violating 20 C.F.R. § 416.1488. *See id.*; Record at 16; 20 C.F.R. § 416.1488(b) (a decision "may be reopened" within two years of the date of notice of the initial determination "if [the commissioner] find[s] good cause, as defined in § 416.1489, to reopen the case"). The plaintiff contends that she submitted new and material evidence, meeting one of the definitions of good cause. *See* Statement of Errors at 14; 20 C.F.R. § 416.1489(a)(1).

As the commissioner points out, *see* Opposition at 19-20, however, the court does not have subject matter jurisdiction to decide this claim. "Denial of a request to reopen a claim for benefits generally is not subject to judicial review absent a colorable constitutional claim[,]" *Greene v. Astrue*, No. 2:10-cv-486-GZS, 2011 WL 4543890, at *1 (D. Me. Sept. 28, 2011) (rec. dec., *aff'd* Oct. 14, 2011), and the plaintiff has made no constitutional claim here, *see* Statement of Errors at 14.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 26th day of December, 2016.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge